# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **United States of America** | Case No. 3:25-CR-38 (KAD) |
| v. | |
| **Travis Tilley,** | |
| Defendant. | May 30, 2025 |

### Government's Sentencing Memorandum

The United States respectfully submits this memorandum in aid of sentencing of the defendant, Travis Tilley. As explained below, the government respectfully asks the Court to impose a Guidelines sentence of 120 months' imprisonment, followed by a lengthy period of supervised release, and to order that the defendant pay a $5,000 mandatory assessment under the Justice for Victims of Trafficking Act.

### 1. Offense Conduct

A detailed recitation of the undisputed facts appears in the Presentence Report ("PSR"), ECF No. 49, at paragraphs 6 through 14. A summary of the relevant facts is provided below.

*Mr. Tilley's Prior Connecticut Convictions*

In August 2017, a five-year-old female child disclosed to her grandmother that Tilley, a friend of the victim's mother who sometimes babysat the victim, had sexually abused her. (PSR ¶ 39.) The Naugatuck Police Department was notified and, as part of its investigation, obtained a warrant to search Tilley's electronic devices. (PSR ¶ 38.) That search uncovered seven images and one video of child sexual abuse material.[1] (*Id.*)

---

[1] Throughout this memorandum, the government uses the phrase "child sexual abuse material" (or "CSAM") interchangeably with "child pornography," as defined in 18 U.S.C. § 2256(8).

Tilley was arrested and later pleaded guilty to risk of injury to a child and possession of child pornography in the third degree. (PSR ¶¶ 38–39.) For the charge of risk of injury to a child, which stemmed from his sexual abuse of the five-year-old victim, he was sentenced to 20 years' imprisonment, execution suspended after 5 years, and 15 years' probation. (PSR ¶ 39.) For the charge of possession of child pornography in the third degree, he received a sentence of five years' imprisonment to be served concurrently with the other sentence. (PSR ¶ 38.)

*The Instant Offense*

In March 2023, Tilley's probation officer conducted an unannounced visit to the Naugatuck residence of Tilley's mother, where Tilley resided. (PSR ¶ 7.) Tilley's mother led the probation officer to the second floor, where the probation officer found Tilley sitting on the end of the bed his mother's bedroom. (*Id.*) In plain view, the probation officer saw a video game controller attached a laptop where Tilley had been sitting. (*Id.*) Tilley's mother confirmed the laptop belonged to Tilley, and the probation officer seized the computer, along with a nearby USB drive, because Tilley was not authorized to have them. (PSR ¶ 8.)

Tilley's laptop was later forensically examined, first by the Westport Police Department, then by Homeland Security Investigations. (PSR ¶¶ 9–10.) All in all, the examinations uncovered two videos depicting CSAM, a cache of artificial intelligence-generated CSAM, and evidence showing Tilley's participation in various chatrooms focusing on CSAM and the sexual abuse of children. (PSR ¶¶ 9–12.) Additionally, examination of the USB drive showed that it was loaded with a counter-forensic "amnesiac" operating system that would allow Tilley to hide his activities on the laptop. (*See* PSR ¶ 13.)

**2.    Procedural History**

Tilley was arrested and charged by criminal complaint on May 13, 2024, with receipt of

child pornography, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). (*See* ECF Nos. 1, 11, 13.) On March 3, 2025, he appeared before the Honorable Kari A. Dooley, United States District Judge, waived his right to indictment, and pleaded guilty in accordance with a plea agreement with the government to a one-count information charging him with possession of child pornography, in violation 18 U.S.C. § 2252A(a)(5)(B), (b)(2). (*See* ECF Nos. 36-39.) In the plea agreement, Tilley agreed that he is subject to a mandatory minimum sentence of imprisonment of 10 years due to prior Connecticut convictions. (*See* Plea Agreement 6–7, ECF No. 39; PSR ¶ 98.) In exchange for that stipulation, the government agreed not to seek convictions for possession or receipt of obscene visual representations of the sexual abuse of children or receipt of child pornography. (*See* Plea Agreement 11.) Tilley also agreed to forfeit to his interest in his laptop and USB drive, which he used to commit the offense. (*See* Plea Agreement 4; PSR ¶ 111.)

Tilley faces a mandatory minimum sentence of 10 years of imprisonment and a maximum sentence of 20 years of imprisonment because he has "a prior conviction . . . under the laws of any State relating to . . . the . . . possession . . . of child pornography." 18 U.S.C. § 2252A(b)(2); *see* PSR ¶ 104. He also faces a term of supervised release of five years to life, a maximum fine of $250,000, a $100 special assessment, a $5,000 mandatory assessment under the Justice for Victims of Trafficking Act ("JVTA"), 18 U.S.C. § 3014,[2] and up to $17,000 in an additional assessment under 18 U.S.C. § 2259A(a)(1). (PSR ¶¶ 102, 106–109.)

The PSR calculated Tilley's total offense level under the United States Sentencing

---

[2] The JVTA assessment applies only if the Court determines that Tilley is not indigent.

Guidelines to be 26.[3] (PSR ¶ 33.) His prior Connecticut convictions place him in Criminal History Category III. (*See* PSR ¶¶ 37-42.) As a result, the PSR concluded that Tilley's Guidelines range would ordinarily be 78 months to 97 months. (PSR ¶ 93.) However, because the statutorily required minimum sentence of 10 years is greater than the maximum of the applicable guideline range, Tilley's advisory Guidelines sentence is 120 months' imprisonment. (*See* PSR ¶ 93; U.S. Sent'g Guidelines Manual § 5G1.1(b) (U.S. Sent'g Comm'n 2024).) The PSR further calculated that Tilley's advisory supervised release term is five years to life, (PSR ¶ 103), and the advisory fine range is $25,000 to $250,000. (PSR ¶ 109.)

**3.      The § 3553(a) factors support a sentence of 120 months of imprisonment.**

The government respectfully requests that the Court sentence Tilley to the mandatory minimum term of imprisonment of 120 months' imprisonment, followed by a lengthy period of supervised release. Considering the § 3553(a) factors, the government agrees that this substantial sentence is warranted and sufficient to achieve the goals of sentencing.

To start, Tilley's offense was gravely serious. Child sexual abuse material offenses inflict two lasting and deep traumas on their victims. First, the creation of CSAM necessarily "demand[s] the sexual exploitation and abuse of children," who are "seriously harmed—physically, emotionally, and mentally—in the process of producing" it. *United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013). Then, long after the physical abuse has ended, the images of it continue as "'a permanent record' of the depicted child's abuse, and 'the harm to the child is exacerbated by [its] circulation.'" *Paroline v. United States*, 572 U.S. 434, 440 (2014) (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)). The end result is that the most traumatic moments in the child's life

---

[3] At sentencing, because Tilley has assisted authorities by timely notifying the government of his intention to plead guilty, the government intends to make a motion that the Court award the third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

become commodities bartered on the internet by strangers for sexual gratification. *See Paroline*, 572 U.S. at 457 ("It is common ground that the victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured. . . . The unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse . . . plays a part in sustaining and aggravating this tragedy.") (citations omitted); *United States v. Sherman*, 268 F.3d 539, 547-48 (7th Cir. 2001) ("Although society at large is also a victim of these crimes, the primary, identifiable victim is the child portrayed, who must live with the knowledge that adults . . . can pull out a picture or watch a video that has recorded the abuse of that child at any time.").

The harms caused by this cycle of revictimization are devastating. Child sexual abuse material victims are "subject to a greater long-term risk of depression, guilt, poor self-esteem, feelings of inferiority, interpersonal problems, delinquency, substance abuse, suicidal thoughts, and post-traumatic stress disorder than other child sexual assault victims." Patti B. Saris et al., U.S. Sent'g Comm'n, *Federal Child Pornography Offenses* 113 (2012).[4] At the same time, the creation of CSAM frustrates the detection of sexual abuse: Victims are less likely to report what happened to them when images of the abuse exist, often due to their fear that they will be recognized or thought to have been complicit in their abuse. *Id.* at 111.

Having been previously convicted of an offense involving CSAM, Tilley no doubt knew the severe nature of these harms. Even so, he continued to collect material depicting the sexual assault of children, and he joined communities on the internet that reveled in the sexual abuse of children. What is more, he did all this while under judicial supervision, and he employed sophisticated countermeasures to thwart his probation officer's ability to monitor him. His offense

---

[4] Available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf

warrants a serious sentence—one that reflects the gravity of his crimes and sufficiently condemns the wrongfulness of his conduct. A Guidelines sentence of 120 months' imprisonment accomplishes that goal.

Tilley's history of recidivism and the need to deter him and others likewise warrant the significant sentence recommended by the Guidelines. This is Tilley's second offense involving CSAM. A previous conviction, term of imprisonment, and term of probation failed to deter him, so a substantial sentence of imprisonment is called for to dissuade him from returning to this consuming CSAM when he is released. At the same time, a significant sentence will send a warning to others not to consume CSAM.

The goal of deterrence is especially important when one considers that crimes involving child sexual abuse material are almost always committed in secret. Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *See, e.g., Ferber*, 458 U.S. at 760 ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product."); *see also Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."); *United States v. Schrank*, 975 F.3d 534, 536 (6th Cir. 2020) ("[G]eneral deterrence is crucial in the child pornography context.") (citation omitted); *United States v. Goff*, 501 F.3d 250, 261 (3d Cir. 2007) ("[D]eterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing[.]); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market

demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.") (citation omitted). Here, a sentence of 120 months' imprisonment will send a powerful message to those who would "harm[] and debase[] the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008). The goal of deterrence is realized if even one person is deterred.

Aside from the factors discussed above, the Guidelines also favor a sentence of 120 months' imprisonment. Indeed, absent the statutory mandatory minimum, they would recommend a lower sentence of 78 to 97 months.

Finally, in addition to a sentence of imprisonment, the Court should order that Tilley serve a lengthy period of supervised release to assure that he does not return to viewing CSAM after his release. A substantial term is appropriate given Tilley's recidivism and his distribution of his large collection of CSAM.

## 1.    Restitution and Assessments

At this time, the government has not received any requests for restitution. However, Tilley remains subject to a mandatory $5,000 assessment under the JVTA. Funds collected under the JVTA are deposited in the "Domestic Trafficking Victims' Fund." 18 U.S.C. § 3014(c). The Attorney General must "use amounts available in the Fund to award grants or enhance victims' programming" under the Trafficking Victims Protection Act, the Trafficking Victims Protection Reauthorization Act, the Victims of Child Abuse Act, or the PROTECT Our Children Act. Id. § 3014(e).

The assessment is mandatory unless the Court finds the defendant to be indigent. *See* 18 U.S.C. § 3014(a) ("[T]he court *shall* assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under . . . chapter 110 . . . .") (emphasis added). In *United States v.*

*Rosario*, 7 F.4th 65, 70 (2d Cir. 2021), the Second Circuit concluded that determining indigency requires a review of the defendant's current financial status and his future earning potential:

> We agree with our sister circuits, concluding that when determining whether a defendant is indigent pursuant to section 3014(a), a court may consider both the resources available to the defendant at the time of sentencing and the defendant's future earning potential. See *United States v. Clarke*, 979 F.3d 82, 101 (2d Cir. 2020) ("When making an indigency determination, a district court 'may consider both [the] defendant's present financial resources and those that may become available in the future.' " (quoting *United States v. Salameh*, 261 F.3d 271, 276 (2d Cir. 2001)).

The government submits that Tilley's lack of financial liabilities, (*see* PSR ¶ 89.), and future earning capacity support a finding that he is not indigent. Accordingly, the government requests the Court to order the mandatory assessment of $5,000 under 18 U.S.C. § 3014.

## 4.      Conclusion

For the reasons above, the government respectfully asks the Court to impose a Guidelines sentence of 120 months imprisonment, a lengthy term of supervised release, and a $5,000 assessment under the JVTA.

Respectfully submitted,

DAVID X. SULLIVAN
UNITED STATES ATTORNEY

DANIEL E. CUMMINGS
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv206702
157 Church Street, 25th Floor
New Haven, CT 06510
Tel: (203) 821-3700
Fax: (203) 773- 5376
Daniel.Cummings@usdoj.gov

## CERTIFICATION

I hereby certify that on May 30, 2025, a copy of the foregoing was filed electronically with the court and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

DANIEL E. CUMMINGS
ASSISTANT U.S. ATTORNEY